## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LEONARDO PIÑON,

          Petitioner,

v.                                          No. CIV 06-686 MV/LFG

ROBERT ULIBARRI, Warden,

          Respondent.

### ORDER ADOPTING MAGISTRATE JUDGE'S FINDINGS
### AND RECOMMENDED DISPOSITION

### Introduction

On December 4, 2006, the Magistrate Judge filed Findings and Recommended Disposition [Doc. No. 10], recommending denial of Petitioner Leonardo Piñon's ("Mr. Piñon or Petitioner") § 2254 petition for writ of habeas corpus and dismissal of this case.  On December 18, 2006, Mr. Piñon filed objections [Doc. No. 11] to the proposed findings and recommended disposition.  The Court conducted a *de novo* review of those portions of the Magistrate Judge's findings and recommended disposition to which Mr. Piñon objects.  28 U.S.C. § 636(b)(1).

First, the Court notes that the Magistrate Judge's recommended report inadvertently skipped paragraph number 57 in its 1-99 proposed findings.  [Doc. No. 10, p. 19.]  While Mr. Piñon set forth an objection to omitted paragraph 57, the Court assumes he intended to object to ¶¶ 56 or 58.  In any event, Mr. Piñon objected to almost all of the proposed findings with the exception of introductory paragraphs, the Magistrate Judge's recitation of the procedural and factual history, and the applicable

1

standards of law.[1]  Therefore, the Court conducts a *de novo* review of virtually all of the Magistrate Judge's proposed findings and recommended disposition.

Second, the Court observes that most of Mr. Piñon's objections consist of re-hashing the same arguments raised in his federal habeas petition and in his response to the State's motion to dismiss. For example, in his response to the Motion to Dismiss, Mr. Piñon argued, *inter alia*, that his trial counsel was ineffective for abandoning him at a critical stage of the criminal proceeding,  failing to conduct "any pretrial investigation," failing to pursue numerous meritorious pretrial motions, failing to permit Mr. Piñon to testify on his own behalf, and failing to adequately present a defense of entrapment.  [Doc. No. 9, at pp. 7-9, 12.]

In his objections, Mr. Piñon again argues, *inter alia*, that defense counsel "pursued virtually no independent investigation," unreasonably limited the investigation of a defense of entrapment, was late in filing a potentially dispositive pre-trial motion, did not pursue potentially meritorious pre-trial motions, and failed to advise Petitioner of his right to testify in his own defense.  The Magistrate Judge's recommended disposition thoroughly addressed each contention raised by Mr. Piñon and properly rejected those contentions.

In other words, the Court agrees that the state court determinations on the same claims raised in the federal habeas petition were adjudications on the merits.  Further, the Court concludes that those determinations were not contrary to nor did they involve an unreasonable application of federal

---

[1]Mr. Piñon's counsel set forth an initial list of proposed findings to which he objected, but then ultimately objected to ¶¶ 8, 15, 17, 20, 23-99, or to essentially all of the proposed findings.  The Court also observes that Mr. Piñon objected to entire paragraphs of the Magistrate's proposed findings, consisting of numerous sentences, without specifying what portions of those paragraphs were legally or factually objectionable.  This makes review and consideration of the objections difficult.  In making objections, it is more effective, for purposes of a *de novo* review, to isolate or specify the exact findings to which objections are made and permits the Court to focus on the Petitioner's strongest and perhaps most legitimate objections.

law.  Finally, the Court decides that the state court decisions were not based on unreasonable determinations of the facts in light of the evidence.

### *De Novo* Review and Discussion

I.     Alleged Inadequate Investigation, Abandonment of Client, and Failure to Present Entrapment Defense

Mr. Piñon argues that defense counsel pursued almost no independent investigation of his case and that counsel's decision to limit the investigation of a defense of entrapment was unreasonable. [Doc. No. 11, ¶¶ 2, 10-18.]  More specifically, Petitioner contends that trial counsel "inexplicably abandoned his investigation at an unreasonable stage of the proceedings" without providing any strategic reason for doing so, that his attorney failed to investigate evidence of entrapment, and that "an adequate investigation would have revealed Mr. Piñon was a law abiding person who succumbed to the relentless inducement of a drug dealer working off charges with three state police officers." [Id., ¶ 17.]

The state court judge heard evidence on these same allegations at an evidentiary hearing (on state habeas petition).  That state habeas judge, who also presided over Mr. Piñon's trial, determined that trial counsel did raise the defense of entrapment by way of a motion to dismiss.  While the motion was filed on the morning of trial and then denied, the state court judge wrote that he carefully listened to the trial testimony of the state's witnesses as well as defense counsel's "vigorous cross-examination" of those witnesses.  In sum, after hearing evidence at trial and later testimony by Mr. Piñon at the evidentiary hearing, the state court determined there was no objective or subjective entrapment.

The state court also found that trial counsel was in reasonable contact with Mr. Piñon during the pretrial stages of the criminal proceeding and that Mr. Piñon, who was free on bond, had opportunity to contact counsel if he believed his investigation was not adequate.  Mr. Piñon provided no evidence to demonstrate how other witnesses' testimony might have provided persuasive support of his theory of entrapment.  Mr. Piñon argues that he "repeatedly urged [trial counsel] to investigate his claims that his wife and family were intimidated by the Agents."  [Doc. No. 11, ¶ 4.]  In support of this assertion, Mr. Piñon cites to pages 6 and 7 of his state habeas petition.  However, the Court's review  finds no mention of the alleged intimidation of Piñon's <u>wife and family</u>[2] on those pages, and only a single mention that Mr. Piñon told trial counsel at their first meeting that he felt he was entrapped by agents, along with an allegation that Piñon felt "harassed, persuaded and intimated [sic] to commit the offense."

In his objections, Mr. Piñon argues that his habeas petition and testimony at the evidentiary hearing "both demonstrate" that trial counsel failed to attend numerous contacts between Mr. Piñon and law enforcement officers.  [Doc. No. 11, ¶ 4.]  However, in support of this argument, there is again a single citation – "New Mexico Verified Petition, p. 7."  In examining the state habeas petition at page 7, the Court sees only that trial counsel allegedly advised Mr. Piñon to maintain contact with the DA's Office and to cooperate with agents, that Mr. Piñon allegedly met with the DA's Office on repeated occasions and that trial counsel did not attend those meetings between Piñon and the DA.  There is no substantiation for an allegation that trial counsel failed to return calls to Mr. Piñon, refused any request by Mr. Piñon to attend meetings at the DA's office, failed to keep appointments

---

[2]Mr. Piñon's fear that agents would not leave him and his family alone unless he acquiesced in helping the agents buy drugs does not show agents actually intimidated Mr. Piñon's family.

with Mr. Piñon, failed to meet with witnesses whom Mr. Piñon believed would give exculpatory testimony, or that trial counsel was required to attend the sessions between Mr. Piñon and the DA. In addition, while Mr. Piñon refers to supporting testimony given at the evidentiary hearing, there is no citation to testimony during that hearing.[3]  It is not the Court's function to search the record for evidence to support the contention.  *See* Gross v. Burggraf Const. Co., 53 F.3d 1531, 1546 (10th Cir. 1995) (noting court's obligation does not extend to locating record citations to support summary judgment contentions).

According to the state habeas court's ruling on the evidentiary hearing, the judge noted that while Mr. Piñon alleged he would have been vindicated by the testimony of "Knute" and "Glen Cameron's sister," Mr. Piñon never determined the identities of these individuals, even though he had more opportunity to do so than his defense counsel.  Moreover, Mr. Piñon did not provide argument or testimony as to what exact exculpatory evidence those two individuals could have supplied, or how the testimony from these unknown individual would have resulted in vindication.

The state court judge resoundingly rejected Mr. Piñon's arguments that his trial counsel was ineffective for failure to provide an adequate investigation, that trial counsel abandoned Mr. Piñon during the proceedings, that counsel unreasonably failed to investigate and present an entrapment

---

[3]Mr. Piñon also argues that the Magistrate Judge ignored evidence at the evidentiary hearing that defense counsel "regularly failed to keep appointments with Mr. Piñon or respond to his telephone calls or telephone calls from his wife."  [Doc. No. 11, ¶ 4.]  Again, Mr. Piñon provides no citation to corroborating testimony given at the evidentiary hearing.  He also supplies no dates when appointments were scheduled and skipped by his attorney, and no dates when he or his wife attempted without success to reach counsel.  Instead, Mr. Piñon cites the state habeas petition at pages 7-8 and 17.  There, he avers generally that defense counsel did not "regularly communicate with Mr. Piñon" and that counsel "never consulted with Mr. Piñon about the results of any defense investigation or any potential trial strategy."  On page 17 of the petition, Mr. Piñon alleges that defense counsel never maintained any contact with him, never consulted with him, never solicited his help and never advised him of the defense strategy.  While Mr. Piñon makes generalized accusations, he provides no evidence of any unsuccessful attempts he made to contact his defense attorney, notwithstanding his release on bond for a six-month period after his arrest.

defense, or that a more thorough investigation would have revealed Mr. Piñon to be a law abiding citizen who was seduced on four different occasions to make illegal drug sales. "[E]ven if Counsel had done all of the things that Defendant claims he should have done, the evidence of the Defendant's guilt overwhelms any probability of a different result." [Doc. No. 7, Ex. Q, ¶12.]

While Mr. Piñon argues that there was a "reasonable probability that the jury may have returned a different verdict" if it had learned of his "legitimate claims of entrapment," this is nothing more than speculation as to what a jury "may" have done. Such speculation falls far short of the requisite showing that Mr. Piñon must make to demonstrate ineffective assistance of counsel, i.e., that there was a "reasonable probability that the outcome of the trial would have been different," in accordance with the standard set forth in Strickland. Moreover, Mr. Piñon's conjecture is flatly contradicted by the state court judge who listened both to the evidence at trial and Mr. Piñon's testimony at the later evidentiary hearing.

Having made a *de novo* review, the Court overrules the above-described objections by Mr. Piñon which argue that the Magistrate Judge erred in concluding that the state courts "unreasonably applied the constitutional protections provided by the Court to secure the effective assistance of counsel to the facts of this case." [Doc. No. 11, ¶ 1.] The Court also overrules Mr. Piñon's objections that the state court determinations were contrary to or involved an unreasonable application of controlling precedent of the United States Supreme Court.

II.     Alleged Failure to Advise Mr. Piñon of His Right to Testify at Trial or Alleged Refusal to Permit Mr. Piñon to Testify at Trial

Mr. Piñon raised this same claim in his state habeas petition. In his later written ruling, the state court judge noted that the court advised Mr. Piñon on the record of his right to testify or not

testify on the morning of trial and that the court again advised Mr. Piñon of that right after the close of the State's case.  Therefore, even if trial counsel failed to advise Mr. Piñon of his right to testify at trial, there was no prejudice because Mr. Piñon clearly was informed of that right on two different occasions by the state court.

Notwithstanding the state court's clear communications with Mr. Piñon concerning his right to testify, it is unlikely that defense counsel failed to discuss with Mr. Piñon his right to testify at a trial.  Defense counsel filed a pretrial motion *in limine* seeking to prevent impeachment by prior felony conviction if Mr. Piñon elected to testify at trial.  The trial court denied this motion.  Thus, Piñon's prior conviction would have been permitted as competent and proper impeachment evidence if Mr. Piñon took the stand.  The filing of this pretrial motion contradicts any allegation that defense counsel did not contemplate Mr. Piñon testifying at trial on his own behalf.  Indeed, defense counsel attempted to clear the path for Mr. Piñon to take the stand.

In addition, after a review of the pleadings in this case, the Court observes that separate state appellate counsel argued only seven months after the trial that "Mr. Piñon did not testify [at trial] due to the trial court's ruling that his prior 1998 felony conviction, Bribery of a Public Officer or Public Employee [R.P. 97] would be admitted for impeachment purposes."  [Doc. No. 7, Ex. E, p. 6.] Appellate counsel further asserted that "Mr. Piñon did not testify for this very reason:  he was concerned that if the jury knew of his prior conviction, they would have convicted him regardless of whether they believed he was actually guilty of the crime for which he was on trial."  [Id., p. 7.]  If Mr. Piñon believed he was prevented from testifying or uninformed of his right to testify, this information was known to him at the time his appellate counsel filed pleadings in April 2004, yet no such argument was asserted then.  State appellate counsel's argument is inconsistent with Mr. Piñon's

more recent position that he was not informed of his right to testify at trial, or that trial counsel prevented him from testifying.

Finally, there simply is no evidence to support Mr. Piñon's position that counsel would not allow him to testify at trial. The state court concluded unequivocally that "Defendant elected not to testify. This was his choice. He was not forbidden to testify." [Doc. No. 7, Ex. Q, ¶ 1.]   Indeed, the state court judge observed that Mr. Piñon "told the Court he elected not to testify."   [Id.] Moreover, the state habeas court explained that a decision to testify, in view of the impeachment evidence, would have been poor trial strategy and prejudicial to the defense because the prior conviction "clearly involved deceit and dishonesty."  [Id., p. 2.]

The Court overrules Mr. Piñon's objections to the Magistrate Judge's recommended findings and disposition.

III.     Alleged Failure to File Pre-Trial Motions

Mr. Piñon alleges that trial counsel's performance was constitutionally defective for failure to bring a number of pretrial motions regarding Mr. Piñon's pre-indictment delay, enforcement of the non-prosecution agreement, disclosure of the confidential informant's identity, deficient chain of custody regarding the crack cocaine, and Batson objections.  Mr. Piñon also argued that several of the pretrial motions his trial counsel did file were untimely or filed at the last minute.  Mr. Piñon unsuccessfully raised all of these issues in his state habeas petition.  [Doc. No. 7, Ex. J.]

After a careful *de novo* review of these issues, along with all other issues raised in Mr. Piñon's objections, the Court concludes that the state court decisions neither were contrary to nor did they involve an unreasonable application of federal law.  The Court also determines that the state court decisions were not based on unreasonable determinations of the facts in light of the evidence.

Therefore, the Court overrules all of Mr. Piñon's objections and agrees with the Magistrate Judge's proposed findings and recommendation that Mr. Piñon's § 2254 petition be denied and that the case be dismissed, with prejudice.

IT IS HEREBY ORDERED that the findings and recommended disposition of the Chief United States Magistrate Judge are adopted by the Court.

IT IS FURTHER ORDERED that Petitioner Leonardo Piñon's § 2254 habeas petition [Doc. No. 1] is DENIED, and that the action be, and hereby is, DISMISSED, with prejudice.

_____
*Martha Vazquez*
CHIEF UNITED STATES DISTRICT JUDGE